[Cite as *In re Adoption of D.D.G.*, 2018-Ohio-35.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF D.D.G AND D.R.G. | : : : : : : : : : : : | Appellate Case No. 27741 |
|  |  | Trial Court Case No. 17-ADP-58 17-ADP-59 |
|  |  | (Appeal from Domestic Relations/Juvenile/Probate Court) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of January, 2018.

. . . . . . . . . . .

T.W. II
    Appellant, Pro Se

J.G.
    Appellee, Pro Se

. . . . . . . . . . . .

HALL, J.

{¶ 1} Appellant, T.W. II, father of two children who are the subjects of step-parent adoption petitions, challenges the trial court's determination that his consent to the adoptions is not required on the basis that he "failed without justifiable cause to provide more than de minimis contact with [the children] for a period of one year immediately preceding the filing of the adoption petition[s]." The record supports the trial court determination which we affirm.

## I. Procedural History

{¶ 2} On May 12, 2017, step-father filed petitions to adopt two minor children of his wife. The petitions allege that the natural father's consent to the adoptions is not required because father has not had sufficient contact with the children. Father objected and the consent issue came before the court for an evidentiary hearing on June 28, 2017. On August 30, 2017 the trial court filed judgment entries finding that father's consent is not required for the adoptions. Father appealed.

{¶ 3} The evidence before the trial court is undisputed that father's last actual contact with the children was in April of 2013 when he and his girlfriend appeared at the home of the children, mother, and step-father in order to inquire whether the children could attend his father's funeral. Father and his girlfriend were allowed in the home where they visited for about an hour, although mother would not allow the children to attend the funeral. Subsequently, father testified that he attempted to contact the children through Facebook but did not indicate the times or dates. Mother testified that she did not become aware of any attempted Facebook contact until after the initiation of these proceedings when she learned Facebook has a spam folder which she then checked. She found one

message from 2012 or 2013 and one from earlier in 2017.

{¶ 4} Much of the testimony at the hearing concerned the acrimonious split of mother and father in 2006 which was the last time father had contact with the children before the 2013 home visit. That split involved a domestic violence conviction of father and a Domestic Violence Protection Order against father prohibiting contact with mother. The protection order did not expire until 2011 but its terms allowed for visitation through mother's grandmother. Those visits lasted for less than two months before father moved to Florida. When he returned to Ohio less than a year later he did not resume visitation. He testified he did not know where the children lived until the death of his father in 2013. From the time of the 2013 visit until the filing of the petition mother, step-father and the children have continued to live at the same address. During that time Father never provided birthday or holiday cards, or presents to or for the children. He has never contacted their school about their records or attended any school functions.

## II. Applicable law

{¶ 5} This court has previously stated:

> With regard to adoptions, R.C. 3107.07 provides, in pertinent part, that:
> Consent to adoption is not required of any of the following:
> (A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately

preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

"Because cases such as these may involve the termination of fundamental parental rights, the party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication." (Citations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985). "Once the petitioner has established this failure, the burden of going forward shifts to the parent to show some facially justifiable cause for the failure. * * * The burden of proof, however, remains with the petitioner." *In re A.N.B.*, 12th Dist. Preble No. CA 2012–04–006, 2012–Ohio–3880, ¶ 10, citing *In re Adoption of Bovett*, 33 Ohio St.3d 102, 104, 515 N.E.2d 919 (1987).

* * *

"The first consideration is whether the parent has had more than de minimis contact with the child. This is a factual consideration. If the trial court decides that issue adversely to the parent, then the court further considers whether the lack of contact is justifiable." [*In re Adoption of J.R.H.*, 2d Dist. Clark No. 2013–CA–29, 2013–Ohio–3385] at ¶ 28. We again observed that we "will not disturb the trial court's determination on this point unless it is against the manifest weight of the evidence." *Id.* at ¶ 36, citing [*In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012–Ohio–236, 963 N.E.2d 142,]

at ¶ 24.

" 'In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice" that there must be a reversal of the judgment and an order for a new trial.' " *In re B.A.H.*, 2d Dist. Greene No. 2012–CA–44, 2012–Ohio–4441, ¶ 21, quoting *Steagall v. Crossman*, 2d Dist. Montgomery No. 20306, 2004–Ohio–4691, ¶ 29.

With regard to justifiable cause, the Supreme Court of Ohio has held that "[s]ignificant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child." *Holcomb*, 18 Ohio St.3d at 361, 481 N.E.2d 613, paragraph three of the syllabus.

The *Holcomb* court refused to adopt a "precise and inflexible meaning" for "justifiable cause," but instead stated that "the better-reasoned approach would be to leave to the probate court as finder of fact the question of whether or not justifiable cause exists." *Id.* at 367, citing *In re Adoption of McDermitt,* 63 Ohio St.2d 301, 408 N.E.2d 680 (1980). In this regard, the Supreme Court of Ohio stressed that "[t]he probate court is in the best position to observe the demeanor of the parties, to assess their

credibility, and to determine the accuracy of their testimony." *Id.*

*In re Adoption of W.K.S.,* 2d Dist. Champaign No. 2014-CA-16, 2014-Ohio-3847,

¶¶ 15-22.

{¶ 6} In the case before us there is no dispute that father had no actual contact with the children for four years before the filing of the petitions. Accordingly, the only question is whether it was against the manifest weight of the evidence for the trial court to conclude that his failure to contact the children was without justifiable cause by clear and convincing evidence. We determine the trial court's decision is not against the manifest weight of the evidence. Father indicates he loves his children and desires to be involved in their lives. But the question before us is a legal one, was there justifiable cause for failure to contact the children for one year before the filing of the petition? R.C. 3107.07.

{¶ 7} The probate court noted that Appellant knew of the children's address for four years and did not send cards, gifts or letters. He did not contact their school. Even though there was a juvenile court order for standard parenting time rights with the older child, father did not seek court intervention to enforce that order before the adoption petition was filed. The trial court was in the best position to view the witnesses and make credibility decisions. After carefully reviewing the entire record, we find that the record supports the trial court and we cannot find that the trial court clearly lost its way and created a manifest miscarriage of justice.

### IV. Conclusion

{¶ 8} Appellant's assignment of error is overruled and the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J., and WELBAUM, J., concur.

Copies mailed to:

T.W. II
J.G.
Hon. Alice O. McCollum