[Cite as *In re Adoption of J.R.I.*, 2023-Ohio-475.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | |
|---|---|
| IN THE MATTER OF THE ADOPTION OF: J.R.I. | : |
| | : |
| | :    C.A. No. 2022-CA-22 |
| | : |
| | :    Trial Court Case No. 11303AD |
| | : |
| | :    (Appeal from Common Pleas Court- |
| | :    Probate Division) |
| | : |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on February 17, 2023

. . . . . . . . . . .

DOUGLAS G. HOUSTON, Attorney for Appellee

RICHARD L. KAPLAN, Attorney for Appellant

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Appellant Father appeals from a judgment of the Greene County Court of Common Pleas, Probate Division, that found his consent was not required to move

forward with adoption proceedings involving Father's biological child.[1]  For the following reasons, the trial court's judgment is affirmed.

## I.   Factual and Procedural History

{¶ 2} Mother and Father were never married but had one child together, J.R.I., who was born in May 2017.  When J.R.I was approximately three months old, Father was charged with several misdemeanor offenses, including domestic violence charges, with Mother and J.R.I. identified as the victims of the offenses.  He was ultimately convicted of unlawful restraint and child endangering in the Clark County Municipal Court.  Shortly thereafter, Mother filed for a domestic violence civil protection order ("CPO") against Father.  Following a full hearing, a CPO was issued against Father on February 23, 2018; it remains in effect until February 21, 2023, "unless earlier modified or terminated by order of [the] Court."  Plaintiff's Exhibit 1.  Both J.R.I. and Mother were listed as protected persons in the CPO, which ordered that Father have no contact whatsoever with either of the protected persons either directly or through a third party.

{¶ 3} Since August 28, 2020, Father has been incarcerated for unrelated offenses. At the time of the hearing on the adoption petition, Father was serving a prison sentence for trafficking in drugs with a firearm specification and other felony offenses, with an expected release date in November 2029.

{¶ 4} Father never violated the CPO or sought to modify it.  He claimed that he was unaware that he could attempt to seek modification of the CPO and that he was not

---

[1] In accordance with this Court's policy involving minors, we will refer to the child only by initials, J.R.I.; we will refer to the party seeking to adopt the child as Stepfather; and we will refer to J.R.I.'s biological parents as Mother and Father.

familiar with the procedure to do so. Further, he never sought to secure visitation rights with J.R.I., and no one in his family ever attempted to communicate with J.R.I. after the issuance of the CPO. There was no court order for Father to provide support or maintenance for J.R.I.'s benefit, and he never provided any for J.R.I. However, Mother never requested any assistance from Father, and she did not inform him or his family of her contact information and whereabouts after obtaining the CPO for fear of retribution or harm. The last time Father had any contact or communication with J.R.I. was in September 2017. According to Father, if he were not in prison and there were not a protection order, he would have made contact with J.R.I.

{¶ 5} Mother and Stepfather were married on September 18, 2020. On September 28, 2021, Stepfather filed to adopt J.R.I. with Mother's consent. The petition indicated that Father's consent was not required because he had failed, without justifiable cause, to provide either maintenance and support of J.R.I. by law or judicial decree or to have more than de minimis contact with J.R.I for a period of at least one year immediately preceding the filing of the petition or the placement of J.R.I. in the home of the petitioner.

{¶ 6} Father was served with notice of the hearing on the petition and filed an objection explaining that he had been justifiably unable to support or make contact with J.R.I. due to the active CPO. As a result of the objection, a hearing was held on January 16, 2022, solely to determine whether Father's consent was required prior to proceeding with the adoption. Prior to the start of the hearing, the parties stipulated that Father did not provide any support and had made no contact with J.R.I. in the year preceding the filing of the petition.

{¶ 7} Based on the above information, on March 2, 2022, the trial court found that Father's failure to support J.R.I. was justifiable because there had been no order for support and Mother had never requested support. Nevertheless, the trial court found that Father's consent was not required in order to proceed with the adoption because Father's failure to have more than de minimis contact with J.R.I. had not been justified.

{¶ 8} Father timely appealed.

## II. Analysis

{¶ 9} Father asserts the following single assignment of error:

THE COURT ERRED TO THE PREJUDICE OF [FATHER] WHEN IT HELD THERE WAS NO DE MINIMIS CONTACT WITH THE MINOR CHILD, J.R.I. AND [FATHER'S] COMPLIANCE WITH THE DOMESTIC VIOLENCE PROTECTION ORDER [sic] NOT JUSTIFIABLE CAUSE FOR NOT HAVING ANY CONTACT.

{¶ 10} According to Father, his compliance with the CPO justified his lack of any contact with J.R.I. such that his consent was necessary for the adoption proceedings to continue. Father relies on the Supreme Court of Ohio's decision in *In re Adoption of A.K.*, 168 Ohio St.3d 225, 2022-Ohio-350, 198 N.E.3d 47. Stepfather, on the other hand, contends that even though there was a CPO, it was the result of Father's own criminal conduct, and Father never made any attempts to seek modification of the terms of the CPO or to obtain a court order to have contact with his child. He further argues that *In re Adoption of A.K.* "should not be applied retroactively to the case at bar as Appellee's rights had vested under the prior controlling case law at the time he filed his Petition for

Adoption on September 28, 2021." Brief of Appellee, p. 7.

{¶ 11} At the time Stepfather's petition was filed, the law in this district regarding the parental-consent analysis under R.C. 3107.07(A) was set forth in *In the Matter of Adoption of R.A.H.*, 2021-Ohio-1667, 172 N.E.3d 1140 (2d Dist.). In that case, the stepfather filed a petition for adoption of R.A.H. and alleged that father's consent was unnecessary based upon the father's lack of contact with the minor child in the preceding year. While there was no dispute that father had had no contact at all with the child during the applicable time frame, father testified at the hearing that his failure to have contact was solely the result of a protection order that prohibited any contact. *Id.* at ¶ 5. This Court held:

> [W]hen a parent's failure to have contact with the child within the relevant one-year period is based upon a protection order preventing such contact, the existence of the protection order does not necessarily provide justifiable cause for the failure to have contact and does not necessarily require a finding there is not justifiable cause for the failure. Instead, starting from the prospective [sic] that the consent requirement must be strictly constructed in the parent's favor, the trial court must consider all relevant circumstances and then decide the justifiable cause issue. The relevant circumstances include the facts surrounding the issuance of and the child's inclusion in the protection order, the parent's efforts, if any, to modify the protection order to obtain parenting time, and any other facts deemed relevant by the trial court.

*Id.* at ¶ 21.

{¶ 12} In reaching the above conclusion, we considered case law from the First and Fifth District Courts of Appeals (finding that a protection order issued against a biological parent resulting from the parent's own wrongdoing does not constitute justifiable cause for a failure to have contact with the child) and from the Eighth District Court of Appeals (finding that a valid court order prohibiting a parent from having any contact with his or her children constitutes justifiable cause for the lack of contact), all of which we rejected. *Id.* at ¶ 16-19, citing *In re Adoption of Corl*, 5th Dist. Licking No. 2004CA96, 2005-Ohio-736; *Askew v. Taylor*, 5th Dist. Stark No. 2004CA00184, 2004-Ohio-5504; *Frymier v. Crampton*, 5th Dist. Licking No. 02 CA 8, 2002-Ohio-3591; *In re Adoption of J.L.*, 1st Dist. Hamilton Nos. C-180453, C-180454, 2019-Ohio-366; and *In re Adoption of A.K.*, 2020-Ohio-3279, 155 N.E.3d 239 (8th Dist.). Instead, this Court adopted the approach of the Ninth and Tenth District Courts of Appeals, which required a trial court to consider all relevant circumstances. *See In re Adoption of R.A.H.* at ¶ 19-20, citing *In re Adoption of B.A.A.*, 9th Dist. Wayne No. 16AP0073, 2017-Ohio-8137, and *In re Adoption of N.T.R.*, 10th Dist. Franklin No. 16AP-589, 2017-Ohio-265. Pertinent here, we identified that "the Eighth District has held that when a biological parent relies on a valid court order prohibiting contact with his or her children, the parent has justifiable cause for failing to communicate." *Id.* at ¶ 17, quoting *In re Adoption of A.K.*, 2020-Ohio-3279, 155 N.E.3d 239, ¶ 20 (8th Dist.), *appeal allowed*, 160 Ohio St.3d 1495, 2020-Ohio-5634, 159 N.E.3d 273. Our citation to the Eighth District's case clearly denotes that the appeal had been allowed by the Ohio Supreme Court and was pending before the Court

prior to Stepfather's filing his petition for adoption.

{¶ 13} Stepfather contends that his rights had "vested under the prior controlling case law" and, further, that *In re Adoption of A.K.* should only be applied prospectively, citing to the Supreme Court of Ohio's opinion in *DiCenzo v. A–Best Prods. Co., Inc.,* 120 Ohio St.3d 149, 2008-Ohio-5327, 897 N.E.2d 132. Stepfather's reliance on *DiCenzo* is misplaced. In that case, the Supreme Court of Ohio held that a prior Supreme Court of Ohio decision, which imposed strict liability on nonmanufacturing sellers of defective products, did not apply retroactively to products sold before the prior decision was announced. *Id.* at ¶ 47-48. In determining whether the prior decision should be applied retroactively or prospectively, the Court reiterated that "the general rule is that an Ohio court decision applies retrospectively unless a party has contract rights or vested rights under the prior decision." *Id.* at ¶ 25, citing *Peerless Elec. Co. v. Bowers*, 164 Ohio St. 209, 129 N.E.2d 467 (1955), syllabus. "However, an Ohio court has discretion to apply its decision only prospectively after weighing the following considerations: (1) whether the decision establishes a new principle of law that was not foreshadowed in prior decisions; (2) whether retroactive application of the decision promotes or retards the purpose behind the rule defined in the decision; and (3) whether retroactive application of the decision causes an inequitable result." *Id.* at ¶ 25, citing *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-107, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Prospective-only application "is justified only under exceptional circumstances." *Id.* at ¶ 28.

{¶ 14} The Ohio Supreme Court failed to include any discussion of prospective-only application in *In re Adoption of A.K.,* so we presume that the decision applies

retroactively. Further, the exception to the general rule of retroactive application where contractual rights have arisen or vested rights have been acquired under the prior decision does not apply here. "[A] right is 'vested' when it 'so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent.' " *Harden v. Ohio Atty. Gen.*, 101 Ohio St.3d 137, 2004-Ohio-382, 802 N.E.2d 1112, ¶ 9, quoting *Black's Law Dictionary* 1324 (7th Ed.1999). "To be vested, a right must constitute 'more than a "mere expectation or interest based upon an anticipated continuance of existing laws." ' " *State ex rel. Walmart, Inc. v. Hixson*, Ohio Slip Opinion No. 2022-Ohio-4187, __ N.E.3d __, ¶ 12, quoting *State ex rel. Jordan v. Indus. Comm.*, 120 Ohio St.3d 412, 2008-Ohio-6137, 900 N.E.2d 150, ¶ 9, in turn quoting *In re Emery*, 59 Ohio App.2d 7, 11, 391 N.E.2d 746 (1st Dist.1978). We find it difficult to ascertain how Stepfather could have had a vested right in the application of the existing law at the time he filed his application when the prevailing law at the time was in conflict among the appellate districts and was in the process of being reviewed at the Ohio Supreme Court. We also cannot conclude that a petitioner has either a contractual right or a vested right in adopting a child at the time a petition for adoption is filed, and Stepfather has not identified any support for that contention. Finally, in considering the factors established in *DiCenzo* to determine whether a decision should be applied only prospectively, we do not find that they rise to the level of establishing an exceptional circumstance in this particular case. Consequently, we conclude that *In re Adoption of A.K.* applies to this case, which was pending at the time the Supreme Court's decision was announced.

{¶ 15} We turn now to whether the trial court erred in finding that Father's consent

was not necessary to proceed with the adoption. "The right of a biological parent to the care and custody of his or her children is fundamental and not easily extinguished." *Matter of Adoption of R.A.H.*, 2021-Ohio-1667, 172 N.E.3d 1140, at ¶ 10, citing *Santosky v. Kramer*, 455 U.S. 745, 753-754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The complete termination of this fundamental right has been described as " 'the family law equivalent of the death penalty in a criminal case.' * * * Therefore, parents 'must be afforded every procedural and substantive protection the law allows.' " *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). To that end, "a petition to adopt a minor may be granted only if written consent to the adoption has been executed" by the persons whose consent is required under the adoption statutes. R.C. 3107.06; R.C. 3107.07. "The mother of the child, the father of the child * * *, or a putative father are presumed to have the right to withhold consent to an adoption under R.C. 3107.06(A) through (C). A party may overcome this presumption by establishing that an exception under R.C. 3107.07 to the consent requirement applies." *In re Adoption of H.P.*, Ohio Slip Opinion No 2022-Ohio-4369, __ N.E.3d __, ¶ 20.

{¶ 16} Relevant to this case, R.C. 3107.07(A) provides that consent is not required from:

A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance

and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

"Because R.C. 3107.07(A) is written in the disjunctive, *either* failure to communicate or failure to support during the one-year time period is sufficient to obviate the need for a parent's consent." (Emphasis sic.) *In re Adoption of R.M.Z.*, 2d Dist. Montgomery No. 23511, 2009-Ohio-5627, ¶ 9, citing *In re Adoption of Ford*, 166 Ohio App.3d 161, 2006-Ohio-1889, 849 N.E.2d 330, ¶ 4 (3d Dist.), citing *In re Adoption of McDermitt*, 63 Ohio St.2d 301, 304, 408 N.E.2d 680 (1980). "Any exception to the requirement of parental consent [to adoption] must be strictly construed so as to protect the right of natural parents to raise and nurture their children." *In re Schoeppner's Adoption*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976). Thus, the party petitioning for adoption has the burden of proving, by clear and convincing evidence, that either exception applies. *In re R.L.H.*, 2d Dist. Montgomery No. 25734, 2013-Ohio-3462, ¶ 9.

{¶ 17} Previously, the Ohio Supreme Court formulated a two-step analysis for probate courts to employ in order to determine whether one of the R.C. 3107.07(A) exceptions applied. Under that analysis, "[t]he first step involve[d] the factual determination of whether the parent failed to have contact or to provide support for a period of at least one year immediately preceding the filing of the adoption petition." *Matter of L.R.O.,* 2d Dist. Darke Nos. 2019-CA-19, 2019-CA-20, 2020-Ohio-3200, ¶ 9, citing *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 23. If the petitioner established one of the applicable exceptions by clear and convincing

evidence, then the court would proceed to the second step where the burden of going forward with evidence shifted to the biological parent to show some facially justifiable cause for the failure. *In re Adoption of R.M.Z.* at ¶ 11, citing *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987), paragraph two of the syllabus. The burden of proof, however, remained at all times with the petitioner, who was required to establish the lack of justifiable cause by clear and convincing evidence. *Id.*

{¶ 18} In 2019, the Supreme Court of Ohio introduced a new step to apply in adoption cases where the petition alleges that a parent failed to provide for the maintenance and support of the minor as required by law or judicial decree. *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28. The new first-step requires the trial court to determine "what the law or judicial decree required of the parent during the year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." *Id.* at ¶ 15. This preliminary step must be resolved prior to deciding whether a parent has failed to maintain and support his or her child as required by law or judicial decree. After completing that determination, under the next step, "the court determines whether during that year the parent complied with his or her obligation under the law or judicial decree." *Id.* Lastly, "if during that year the parent did not comply with his or her obligation under the law or judicial decree, the court determines whether there was justifiable cause for that failure." *Id.* The Court concluded that, "pursuant to R.C. 3107.07(A), a parent's nonsupport of his or her minor child pursuant to a zero-support order of a court of competent jurisdiction does not extinguish the requirement of that parent's consent to the adoption of the child." *Id.* at

¶ 43. Thus, if a parent has no obligation to provide child support pursuant to a court order or judicial decree during the applicable statutory time period, the analysis ends at the first step. *Id*. at ¶ 16.

{¶ 19} Although *In re Adoption of B.I.* concerned a situation involving the support prong under R.C. 3107.07(A), in 2022, the lead opinion of the Supreme Court of Ohio applied the same three-part test to cases involving de minimis contact in *In re Adoption of A.K.*, 168 Ohio St.3d 225, 2022-Ohio-350, 198 N.E.3d 47, at ¶ 15. In *In re Adoption of A.K.*, the father of two children had been convicted of murdering the minors' mother and had been sentenced to prison in 2007 for a term of 23 years to life. That same year, the two children were placed with their maternal grandparents, who were awarded custody of the children. The juvenile court's order granting them custody stated that "Father shall have no contact with the minor children absent an Order from this Court." *Id*. at ¶ 2.

{¶ 20} In 2015, the grandparents filed petitions in the probate court to adopt the children, and the father filed an objection. *Id*. at ¶ 3. A hearing was held solely on the issue of whether father's consent was necessary under R.C. 3107.07(A). Ultimately, the trial court "determined that father's consent was not required, because it was his conduct that led to the no-contact order and therefore the order could not provide justifiable cause for his lack of contact with the children for the year prior to the filing of the petitions." *Id*. at ¶ 5.

{¶ 21} The probate court's decision was affirmed on appeal, and the matter was remanded to the probate court to determine whether adoption was in the best interest of

the children. *Id.* at ¶ 6. On remand, the trial court found that the adoption of the children was in their best interest and granted the grandparents' petitions. Father appealed and again challenged the trial court's holding that father's consent was not necessary. He argued that the Supreme Court of Ohio's holding in *In re Adoption of B.I.* was an intervening decision that was controlling authority and, therefore, the appellate court could revisit the issue of consent under R.C. 3107.07(A). *In re Adoption of A.K.* at ¶ 7-8.

{¶ 22} The Eighth District found that *In re Adoption of B.I.* was intervening and controlling authority on the issue of parental-consent under R.C. 3107.07(A) and that the court was, consequently, required to reexamine the issue. *In re Adoption of A.K.* at ¶ 8. Upon reconsideration, the court held that the father's reliance on the no-contact order had constituted justifiable cause for failing to have contact with his children. *Id.*

{¶ 23} After initially determining that the Eighth District was correct to reexamine the parental-consent analysis, the Supreme Court affirmed the Eighth District's decision. In applying the three-part test identified in *In re Adoption of B.I.,* the Court held that "a probate court should not dispense with the requirement of a parent's consent when the parent abided by a court order prohibiting the parent from doing the very act that the statute requires in order for the parent to maintain his or her right to consent to the adoption of his or her minor child." *Id.* at ¶ 18. This is because, under the first prong of the test established in *In re Adoption of B.I.*, "the court first determines what the law or judicial decree required of the parent for the year prior to the filing of the petition." *Id.* at ¶ 16. Thus, the Court concluded that "a parent's right to consent to the adoption of his or her child is not extinguished under R.C. 3107.07(A) when the parent did not have more

than de minimis contact with the minor child during the statutory period because the parent was acting in compliance with a no-contact order prohibiting all communication and contact with the child[.]" *Id.* at ¶ 21.

{¶ 24} The Court further explained that *In re Adoption of B.I.* created an automatic exemption from the trial court's justifiable-cause analysis when a valid court order required no maintenance or support during the applicable statutory period, "regardless of any other circumstances that might pertain to the parent's ability to support the child or whether there is any other obligation under the law to do so." *In re Adoption of A.K.* at ¶ 16. This automatic exemption was similarly applied to cases involving a parent's failure to provide more than de minimis contact with a minor child where the parent's lack of contact is the result of a no contact order. *Id.* at ¶ 17.

{¶ 25} However, the three-part analysis, as applied to the de minimis contact prong of R.C. 3707.07(A), was not adopted by a majority of the Supreme Court. *In re Adoption of A.K.* is a highly divided, plurality opinion. The lead opinion, with only one other member of the court completely concurring, applied the three-part test established in *In re Adoption of B.I.* as described above. However, two other members of the court concurred in judgment only. *Id.* at ¶ 23-51 (DeWine, J., concurring in judgment only). After finding that the Eighth District was warranted in revisiting the consent issue based on *In re Adoption of B.I.*, Justice DeWine rejected the three-part test and engaged in a separate analysis that continued to employ the previously utilized two-step approach. First, the trial court must find that the parent failed either "to provide more than de minimis contact with the minor" or "to provide for the maintenance and support of the minor as

required by law or judicial decree." *Id.* Second, the court must determine whether there was justifiable cause for the failure. *Id.* According to Justice DeWine, the lead opinion "collapses the two questions and improperly concludes that a no-contact order conclusively establishes justifiable cause for a parent's failure to maintain contact with his or her child." *Id.* at ¶ 24. Justice DeWine reasoned that a determination of justifiable cause "necessarily depends on case-specific considerations, such as the specific terms of the order and the extent to which the parent's lack of contact was due to the existence of the order." *Id.* In other words, even if a valid no contact order exists, probate courts should consider the scope of the order and any other evidence presented to determine whether the parent had justifiable cause for failing to maintain de minimis contact with the child during the applicable time frame. *Id.* at ¶ 48. Justice Fischer joined Justice DeWine's concurrence.

{¶ 26} Meanwhile, the first dissenting opinion concluded that *In re Adoption of B.I.* was not an intervening decision, such that the Eighth District Court of Appeals should not have reconsidered its decision regarding father's need to consent to the adoption. *Id.* at ¶ 52 (O'Connor, C.J., dissenting). The first dissent did not, however, provide any analysis regarding what approach should be used when deciding justifiable cause for the lack of parental contact under R.C. 3107.07(A).

{¶ 27} Finally, a second dissenting opinion agreed with the first dissent that *In re Adoption of B.I.* was not an intervening decision in order for the Eighth District to reconsider the need for father's consent. *Id.* at ¶ 53-74 (Kennedy, J., dissenting, joined by Donnelly, J.). Therefore, the law of the case controlled, which already concluded that

the father's failure to maintain de minimis contact was not justified. *Id.* However, in arguing that the lead opinion's conclusion was contrary to the plain language of the statute, Justice Kennedy reasoned that although the three-part test applies to the maintenance-and-support provision of R.C. 3107.07(A), the two-part test applies to the de minimis contact prong. *Id.* According to Justice Kennedy, the judicial-decree element of the three-part test is inapplicable to the de minimis contact prong because "[t]here is no judicial-decree language in the de minimis-contact provision." *Id.* at ¶ 71.

{¶ 28} If we were to apply the first step of the three-part test, this Court would be obliged to reverse the trial court. What was legally required of Father during the year preceding the filing of the petition was to have no contact with J.R.I. whatsoever. Father admitted that he did not have any contact with J.R.I. during the statutory time because of the CPO and, if the CPO were not in place, he would have reinitiated contact. Because the lead opinion in *In re Adoption of A.K.* adopted a bright-line rule that a valid no contact order from a court constitutes an automatic exemption from the justifiable-cause inquiry, this bright-line rule would have to apply to Father.

{¶ 29} Then again, not enough Justices joined that particular portion of the lead opinion to create a majority. *See* Ohio Constitution, Article IV, Section 2(A) ("A majority of the supreme court shall be necessary to constitute a quorum or to render a judgment."). Because the decision is a plurality opinion that failed to receive the requisite support of four justices of the Court in order to constitute controlling law, it is of questionable precedential value. *Kraly v. Vannewkirk*, 69 Ohio St.3d 627, 633, 635 N.E.2d 323 (1994). A majority of the Court agreed with the conclusion that father's consent to the

adoption was required. However, there was no majority agreement with the lead opinion's use of the three-part test or creation of an automatic exemption or bright-line rule. On the other hand, it may be reasoned that four of the justices actually agreed that the two-part test should apply to the de minimis prong of R.C. 3107.07(A) based on the plain language of the statute. *See In re Adoption of A.K.* at ¶ 23-51 (DeWine, J., concurring in judgment only, joined by Fischer, J.) and at ¶ 53-74 (Kennedy, J., dissenting, joined by Donnelly, J.).

**{¶ 30}** While a plurality opinion is not binding authority, it may be considered persuasive. *NASCAR Holdings, Inc. v. Testa*, 152 Ohio St.3d 405, 2017-Ohio-9118, 97 N.E.3d 414, ¶ 18. Under these circumstances, we find that the concurring opinion of Justice DeWine, and the second dissenting opinion by Justice Kennedy, as they relate to the appropriate analysis for determining whether a parent's failure to maintain de minimis contact in the relevant time frame is justified, are more persuasive than the lead opinion.

**{¶ 31}** Looking to the plain language of the statute, the court must first determine whether the parent has failed either "to provide more than de minimis contact with the minor" _or_ "to provide for the maintenance and support of the minor as required by law or judicial decree" for the relevant period. R.C. 3107.07(A). But the language "as required by law or judicial decree" does not apply to the de minimis contact prong, only to the determination of the level of maintenance and support required. In order to determine whether a parent complied with the maintenance and support prong, the court necessarily needs to know the parent's obligation as required by law or judicial decree for the year prior to the filing of the petition. *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-

2450, 131 N.E.3d 28, at ¶ 16. Thus, when a trial court determines whether the parent provided support as required by law or judicial decree, it makes sense to first look to the court order or judicial decree that created the obligation before determining if the parent had satisfied that obligation. If the parent was ordered to provide no support, as was the case in *In re Adoption of B.I.*, then the inquiry ends because the parent, by providing no support, met his or her support obligations. But a determination of how much contact is required under the statute is specified in the statute itself – more than de minimis. Once the court has determined, by clear and convincing evidence, that the parent failed to maintain more than de minimis contact during the applicable time frame, only then does the court consider whether there was justifiable cause for the failure. It is under this second step, determining justifiable cause, that consideration of a no contact order comes into play. We agree with Justice DeWine that a no contact order is not automatic justification for failing to maintain more than de minimis contact but is a factor to consider in determining whether the failure to maintain contact was justified. As he explained in his concurring opinion, "[w]hether a no-contact order amounts to justifiable cause for a parent's failure to contact his or her child necessarily depends on case-specific considerations, such as the specific terms of the order and the extent to which the parent's lack of contact was due to the existence of the order." *In re Adoption of A.K.*, 168 Ohio St.3d 225, 2022-Ohio-350, 198 N.E.3d 47, at ¶ 24. Thus, courts should be permitted to "consider the scope of the order and to determine based on the evidence presented whether the parent's lack of contact with his or her child was truly a result of the order." *Id.* at ¶ 48. Consequently, we decline to follow the lead opinion in this case and continue

to apply the two-step approach.

{¶ 32} We are aware that other appellate districts have adopted the three-step analysis set forth in the lead opinion of *In re Adoption of A.K.* *See, e.g.*, *In re Adoption of M.T.R.*, 5th Dist. Licking No. 2022 CA 00010, 2022-Ohio-2473, ¶ 35; *In re Adoption of D.W.-E.H.*, 8th Dist. Cuyahoga No. 110705, 2022-Ohio-528, ¶ 42; *In re Petition for Adoption of Z.H.*, 2022-Ohio-3926, 199 N.E.3d 1092, ¶ 28-29 (6th Dist.). However, none of the districts have addressed the fact that the opinion was a plurality and whether the three-step analysis *should* apply to the de minimis contact prong of R.C. 3107.07(A). Considering there appears to be a conflict in the appellate districts as to whether the two-step approach or the three-step approach should be applied to the de minimis prong, justice would be better served if the Supreme Court of Ohio provided clearer guidance on this issue.

{¶ 33} We turn now to the facts of this case and apply the two-step analysis. Regarding the first step in this case, the parties stipulated that Father had had no contact with J.R.I. during the entirety of the year preceding the filing of the adoption petition. In fact, he had had no contact with J.R.I. since at least September 2017. The only issue then was whether Father had justifiable cause for failing to have any contact.

{¶ 34} The term "justifiable cause" is not defined in R.C. 3107.07. The Ohio Supreme Court has "refused to adopt a 'precise and inflexible meaning' for 'justifiable cause' but instead has concluded that 'the better-reasoned approach would be to leave to the probate court as finder of fact the question of whether or not justifiable cause exists.' " *In the Matter of Adoption of D.D.G.*, 2d Dist. Montgomery No. 27741, 2018-

Ohio-35, ¶ 5, quoting *In re Adoption of W.K.S.*, 2d Dist. Champaign No. 2014-CA-16, 2014-Ohio-3847, ¶ 22, citing *In re Adoption of Holcomb*, 18 Ohio St.3d at 367, 481 N.E.2d 613. This is because "[t]he probate court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony." *In re Adoption of Holcomb* at 367. However, the Supreme Court has stated that "significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child." *Id.* at 367-368.

{¶ 35} When determining whether justifiable cause has been established, the trial court starts from the prospective that the consent requirement must be strictly construed in the non-consenting parent's favor and then consider all relevant circumstances to decide the justifiable cause issue. *Matter of Adoption of R.A.H.*, 2021-Ohio-1667, 172 N.E.3d 1140, at ¶ 21. "The relevant circumstances include the facts surrounding the issuance of and the child's inclusion in the protection order, the parent's efforts, if any, to modify the protection order to obtain parenting time, and any other facts deemed relevant by the trial court." *Id.*

{¶ 36} The question of whether justifiable cause for the failure to contact the children has been proven in a particular case " 'is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence.' " *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, at ¶ 24, quoting *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d

140 (1986), paragraph two of the syllabus. "In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice' that there must be a reversal of the judgment and an order for a new trial." *Steagall v. Crossman*, 2d Dist. Montgomery No. 20306, 2004-Ohio-4691, ¶ 29, citing *Pryor v. Tooson*, 2d Dist. Clark No. 2002-CA-91, 2003-Ohio-2402, ¶ 29.

{¶ 37} In determining that Father did not have justifiable cause for failing to have any contact with J.R.I. in the year preceding the filing of the adoption petition, the trial court considered, and rejected, Father's proposed justifications. First, the trial court rejected Father's claimed lack of contact as a result of his incarceration. Although the fact of incarceration might, when combined with other factors, lend support to a finding that there was justification for failing to provide more than de minimis contact, it does not constitute justification as a matter of law. *See In re Schoeppner's Adoption*, 46 Ohio St.2d at 24, 345 N.E.2d 608. This is because an incarcerated individual can still maintain contact with those outside of their confinement such as by writing letters, emailing, or calling them. *See, e.g., In re Adoption of R.M.Z.*, 2d Dist. Montgomery No. 23511, 2009-Ohio-5627, at ¶ 21 ("Incarceration of a parent, absent additional circumstances, does not justify failure to communicate with a child, because it does not preclude letter-writing and phone calls."). Thus, the trial court was not bound or required to find that Father's incarceration was a justifiable cause for his lack of contact. Moreover, it is clear from

Father's own testimony that he did not fail to have contact with J.R.I. because he was incarcerated; rather, according to him, it was the CPO that prevented him from having any contact with J.R.I.   Trial Tr. 35-36.

{¶ 38} However, the trial court also rejected the CPO as the basis for Father's failure to maintain de minimis contact.   The CPO was issued as a result of a domestic dispute that involved Fathers' assaulting Mother and J.R.I.   Both Mother and J.R.I. were listed as protected persons on the CPO, which was issued against Father on February 23, 2018, and remains in effect until February 21, 2023.   The CPO explicitly stated that the terms of the order were to remain in full force and effect until the termination date "unless earlier modified or terminated by order of this Court."   Plaintiff's Exhibit 1.   It is undisputed that Father never violated the CPO.   It is further undisputed that Father never attempted to obtain a modification or termination of the CPO, whether through legal assistance, pro se, or any other means, regardless of whether he was in custody or out of custody.   He also did not attempt to establish parenting time or any other form of contact "as one might reasonably expect him to do if he sought to form or sustain a relationship with the child."   *In re Adoption of S.M.H.*, 2d Dist. Greene No. 2013-CA-59, 2014-Ohio-45, ¶ 15.   Unlike the father in *In re Adoption of A.K.*, who was also subject to a no contact order, Father did not set up a guardianship estate to support J.R.I., write letters to J.R.I. via a third party to be presented after the expiration of the CPO, or participate in any prison program that would allow him to send J.R.I. gifts anonymously.   Instead, Father contends that by sitting back and doing absolutely nothing, he could rely on the CPO to justify his lack of contact.   We do not agree.   One of the important

considerations in determining justifiable cause is not only the parent's ability to support or contact their child, but his or her willingness to do so. *In re Adoption of Masa*, 23 Ohio St.3d at 166, 492 N.E.2d 140. As we previously recognized, "a parent's 'efforts to enforce his parental rights, prior to the filing of [a stepparent's] adoption petition' are a relevant consideration when reaching the justifiable cause conclusion." *Matter of Adoption of R.A.H.*, 2021-Ohio-1667, 172 N.E.3d 1140, at ¶ 14, quoting *Adoption of M.G.B.-E.*, 154 Ohio St.3d 17, 2018-Ohio-1787, 110 N.E.3d 1236, ¶ 43. While Father may not have been permitted to have contact pursuant to the terms of the CPO, he made absolutely no effort whatsoever to demonstrate his willingness to contact J.R.I. for nearly five years. Under these circumstances, the trial court's determination that Father's lack of contact was not justifiable was not against the manifest weight of the evidence.

{¶ 39} While not raised in his initial objection, Father argued that Mother's actions justified his failure to maintain contact. Although Father claims Mother was "hiding" and, therefore, he would have been unable to file for a modification, we find his argument disingenuous. First of all, Father never looked into obtaining a modification or whether he would be able to locate Mother in the event he anticipated filing anything. Thus, his claims are purely speculative. Notably, the CPO would not have prevented him from locating Mother's address in order to file for a modification with the court. The fact that he could have done these things, but did not, emphasizes Father's lack of effort and willingness to try to have any contact with J.R.I.

{¶ 40} Additionally, Mother testified that after the domestic violence incident, she moved in with family members for the next two years until she and J.R.I. moved into their

own apartment. Father was familiar with the addresses of her family members. Likewise, while Mother had a new phone number for approximately one year prior to the hearing, previously she had had the same phone number for several years, including at the time when Mother and Father were still together. Mother explained that she had not provided her new addresses or phone number to Father because she was afraid of him and she did not want to initiate any contact per the protection order. However, she also testified that even when she lived in places that Father was familiar with and had a phone number that Father knew, neither he nor his family ever reached out to her. Moreover, neither Father nor his family ever tried to establish contact with J.R.I. through her or any court. According to Mother, she would have been easy to locate via social media channels had Father wanted to locate her contact information. We agree with the trial court that this is not the case where a parent's attempts to contact a child were intentionally thwarted or refused by the custodial parent. Rather, Father never made any attempts to re-establish contact.

{¶ 41} After carefully reviewing the entire record, and considering the totality of the circumstances, we conclude that the record supported the trial court's decision, and the trial court did not clearly lose its way or create a manifest miscarriage of justice. Because this is not one of those exceptional cases in which the evidence weighs heavily against the probate court's decision, Father's sole assignment of error is overruled.

### III. Conclusion

{¶ 42} Having overruled Father's assignment of error, we affirm the judgment of the trial court.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.