[Cite as *In re Adoption of H.L.W.B.*, 2022-Ohio-3161.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| THE ADOPTION OF H.L.W.B. | : | Appellate Case No. 2022-CA-25 |
| | : | |
| | : | Trial Court Case No. 20215024 |
| | : | |
| | : | (Appeal from Common Pleas |
| | : | Court – Probate Division) |
| | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 9th day of September, 2022.

. . . . . . . . . .

MARK J. BAMBERGER, Atty. Reg. No. 0082053, 5601 Rahn de Vue Place, Dayton, Ohio 45459
    Attorney for Respondent-Appellant, Birthmother

ZACHARY S. BAYLESS, Atty. Reg. No. 0090753, 100 East Main Street, Springfield, Ohio 45502
    Attorney for Petitioners-Appellees, Adoptive Parents.

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Respondent-Appellant K.M.G. (Birthmother) appeals from an order of the Clark County Probate Court which granted the petition for adoption of Petitioners-Appellees M.B. and C.B. (Adoptive Parents) for the adoption of six-year-old H.L.W.B. For the reasons that follow, the judgment of the trial court will be affirmed.

## I.     Facts and Procedural History

{¶ 2} H.L.W.B. was born on February 24, 2016, from the union of Birthmother and Birthfather. During the spring of 2016, H.L.W.B. was found to be a dependent child and was placed in the Adoptive Parents' home. Adoptive Mother is a cousin of Birthfather. The Clark County Court of Common Pleas, Juvenile Division, awarded temporary custody of H.L.W.B. to Adoptive Parents in June 2016 and legal custody in April 2017.

{¶ 3} The juvenile court granted both Birthmother and Birthfather supervised parenting time with H.L.W.B., provided that they satisfied certain requirements. For instance, Birthfather's parenting time was conditioned on his sobriety and participation in drug treatment, and Birthmother was required to arrange transportation with a licensed driver in an insured, safe vehicle. The parenting time for the parents, though, was short-lived. After his second supervised visit, Birthfather tested positive for drugs; consequently, his parenting time was suspended. He then spent significant time in prison due to an aggravated burglary conviction. Birthmother also lost the opportunity to visit after May 2017 due to her failure to secure transportation pursuant to the order. In 2018, Birthmother moved to Florida (where she continues to reside) with her boyfriend. The last in-person visit with either biological parent was in May 2017.

{¶ 4} On April 1, 2021, Adoptive Parents filed a petition for adoption of H.L.W.B.,

and the matter proceeded to a hearing on February 28, 2022. There, the probate court considered two issues: (1) whether consent of the child's biological parents was required; and (2) whether an adoption by Adoptive Parents was in the best interest of H.L.W.B. At the hearing, the court heard from both biological parents, the adoptive parents, and what could be described as "character witnesses" for Birthmother. The court also considered several exhibits, including Facebook messages, child support payments, and other documents.

{¶ 5} On March 4, 2022, the probate court granted Adoptive Parents' petition for adoption, finding that consent of the biological parents was not required and that the adoption was in the best interest of H.L.W.B.

{¶ 6} Birthmother (but not Birthfather) has appealed the probate court's decision, raising a single assignment of error.

## II. The trial court did not err by granting the Adoptive Parents' adoption petition

{¶ 7} In her assignment of error, Birthmother argues that "the trial court failed to consider all evidence under the weight of evidence standard," seemingly taking issue with the probate court's determination that she had had no contact with H.L.W.B. or financially provided for his support during the applicable period from April 1, 2020, and April 1, 2021.

{¶ 8} It is well established that a parent has a fundamental right to care for and have custody of his or her child and that those rights are terminated when a child is adopted. *In re Adoption of M.M.R.*, 2d Dist. Champaign No. 2017-CA-12, 2017-Ohio-7222, ¶ 5. However, R.C. 3107.07(A) provides that consent to adoption is not required of

a parent of a minor child "when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor * * * for a period of at least one year immediately preceding * * * the filing of the adoption petition[.]"

{¶ 9} Courts use a two-step process when applying R.C. 3107.07(A). First, a probate court decides whether the parent has failed to provide for the support and maintenance of the child or has failed to have more than de minimis contact. *In re Adoption of M.M.R.* at ¶ 7. Probate courts have much discretion over the factual determinations, which will not be disturbed absent an abuse of discretion. *In re Adoption of M.B.,* 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 21-23; *In re Adoption of J.R.H.*, 2d Dist. Clark No. 2013-CA-29, 2013-Ohio-3385, ¶ 25-28. To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984).

{¶ 10} If the probate court determines that the parent failed to support or provide maintenance for the child or had less than de minimis contact, the court's next step is to "determine whether justifiable cause for the failure has been proven by clear and convincing evidence." *In the Matter of Adoption of M.M.R.* at ¶ 8. The question of whether justifiable cause has been proven will not be disturbed on appeal unless the determination is against the manifest weight of the evidence. *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140 (1986), paragraph two of the syllabus. " 'In determining whether a

judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice" that there must be a reversal of the judgment and an order for a new trial. *In re Adoption of B.A.H.*, 2d Dist. Greene No. 2012-CA-44, 2012-Ohio-4441, ¶ 21, quoting *Steagall v. Crossman*, 2d Dist. Montgomery No. 20306, 2004-Ohio-4691, ¶ 29.

Contact with H.L.W.B.

{¶ 11} Birthmother had no contact with H.L.W.B. in the year leading up to the filing of the adoption petition (April 1, 2020, through April 1, 2021), and she concedes this point. She does, however, argue that Adoptive Mother blocked her attempts to contact the child, essentially arguing that there was justifiable cause for her failure to communicate.

{¶ 12} Even if a parent has completely failed to communicate with a child during the prescribed time period, his or her consent to adoption may still be required if there is justifiable cause for the failure of communication. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 367, 481 N.E.2d 613 (1985). "Typically, a parent has justifiable cause for non-communication if the adopting [parent] has created substantial impediments to that communication." *Id.* Because justifiable cause is a nebulous term, the Ohio Supreme Court has left it to the probate court, as the finder of fact, to determine if justifiable cause exists. *Id.*, citing *In re Adoption of McDermitt*, 63 Ohio St.2d 301, 408 N.E.2d 680 (1980). "The probate court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony." *Id.* The Ohio Supreme

Court did give some guidance, though, noting that "significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child." *Id.* at 367-368.

{¶ 13} "The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication." *Id.* at 368.

{¶ 14} Birthmother had no contact with H.L.W.B. after her May 2017 visitation with him (no visits, calls, letters, birthday cards, Christmas gifts, or social media messages) and had no contact with Adoptive Parents until after they filed their adoption petition. Birthmother attributes the lack of communication to Adoptive Mother's blocking her attempts. She testified that she tried to contact H.L.W.B. several times a month through various means, but Adoptive Mother never answered the phone and "blocked" her on Facebook Messenger. Birthmother also testified that prior to her move to Florida, she drove by the Adoptive Parents' house several times, but it appeared vacant, and so she figured they had moved. When questioned on cross-examination why she had not made any trips back up to Springfield to see her son, Birthmother explained that she had been unable to travel due to COVID, but she conceded that she had not been prohibited from traveling out of Florida to Ohio.

{¶ 15} Adoptive Mother, on the other hand, testified that Birthmother had not attempted to visit since May 2017 and flatly denied ever blocking Birthmother from

contacting H.L.W.B.; instead, she insisted that Birthmother never tried. Adoptive Mother stated, "I believe the last messages on Facebook were October of 2016 until I actually reached out to her last year when we were going to file for the adoption." Hearing Tr. at 29. After Adoptive Mother reached out to Birthmother via Facebook to get her address for adoption purposes, Birthmother did inquire as to H.L.W.B.'s well-being, but Adoptive Mother directed any questions to her attorney. Birthmother never contacted the attorney.

{¶ 16} We conclude, as the probate court did, that Birthmother had no contact with H.L.W.B., without justifiable cause, during the applicable one-year period leading up to the filing of the adoption petition (April 1, 2020, through April 1, 2021). In fact, she had no contact or communication with her son in over four years. The trial court did not err in finding that Birthmother failed the communication prong of the analysis, i.e., that there was no justifiable cause for non-communication.

Support and Maintenance

{¶ 17} The probate court also determined that Birthmother did not provide for the support and maintenance of H.L.W.B. This conclusion is borne out by the record. Birthmother introduced as evidence her child support records from March 1, 2020, through February 14, 2022, and during the applicable one-year period prior to filing the adoption petition, Birthmother tendered $1,436 in child support. Of that total, however, $1,200 was from the federal government's COVID funds, leaving $236 in volitional payments. As the probate court calculated, the payments made by Birthmother in the applicable time frame (even including the free COVID funds) were about 7% of what was due for the child, and Birthmother acknowledged that she owed approximately $20,000

in arrearages. We agree with the probate court that Birthmother did not adequately provide for the financial support and maintenance of H.L.W.B. *Accord In re Adoption of A.C.B.*, 159 Ohio St.3d 256, 2020-Ohio-629, 150 N.E.3d 82 (biological father's single $200 payment within the relevant one-year period did not constitute maintenance and support as required by law or judicial decree where he owed more than $4,420 for the year).

{¶ 18} The next step in the analysis is to determine whether there was justifiable cause for the lack of support. In this instance, Birthmother does not offer an explanation as to why there had been a lack of financial support, but does, in her appellate brief, admit that she had a child support order and that her son deserved that support. Appellant Brief at 20. On the other hand, she argues that child support payments should not be used to determine whether a parent can see his or her child. Her argument is unavailing as there is more to the concept of maintenance and support than just money.

{¶ 19} "Maintenance and support, in the adoption context, do not simply refer to child support payments or other monetary contributions." *In re Adoption of K.L.M.,* 10th Dist. Birthfather No. 15AP-118, 2015-Ohio-3154, ¶ 15. Maintenance and support can mean almost any type of "aid to feed, clothe, shelter, or educate the child; provide for health, recreation, travel expenses; or provide for any other need of the child. * * * Supplying shoes, diapers, or any other clothing can constitute support and maintenance." *In re Adoption of Groh*, 2003-Ohio-3087, 794 N.E.2d 695, ¶ 48 (7th Dist.). Birthmother did none of those things. She essentially abandoned H.L.W.B. for years, providing nothing for him, monetarily or otherwise. There is no justifiable cause for the lack of support and

maintenance.

{¶ 20} Based on the record before us, we cannot say that the trial court erred when it found that Birthmother had "forfeited [her] right to withhold consent to the petition for the adoption of [her] child." She had no contact or communication with H.L.W.B. in the year prior to the filing of the adoption petition and presented no justifiable cause to excuse it. Further, Birthmother did not provide for the financial support and maintenance of her child. Her assignment of error is overruled.

### III.     Conclusion

{¶ 21} The judgment of the probate court will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.

Copies sent to:

Mark J. Bamberger
Zachary S. Bayless
M.W.F.
Hon Richard P. Carey