[Cite as *In re F.D.H.*, 2023-Ohio-730.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

IN THE MATTER OF
THE ADOPTION OF F.D.H.

:
:
:     C.A. No. 29562
:
:     Trial Court Case No. 2021 ADP 00159
:
:     (Appeal from Common Pleas Court-
:     Probate Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on March 10, 2023

. . . . . . . . . . .

L. ANTHONY LUSH, Attorney for Appellee

SARA M. BARRY, Attorney for Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Appellant C.C. (Father) appeals from an order of the Montgomery County Probate Court which granted a petition for adoption of F.D.H. by Appellee J.H. (Stepfather). For the reasons that follow, the judgment of the trial court will be affirmed.

I.     **Facts and Procedural History**

{¶ 2} F.D.H. was born in February 2012 from the union of A.H. (Mother) and Father. Mother and Father, while never married, were in a long-term romantic relationship, and Father was listed on the birth certificate. Mother and Father broke up in 2016, and by 2018, Mother and Stepfather began dating. They were married in June 2020. Around that same time, Father was arrested on drug charges, spent two months in jail, and was then (as part of his sentence) transferred to a lockdown treatment center to deal with substance abuse issues. He remained in the treatment facility until June 17, 2021.

{¶ 3} On November 18, 2021, Stepfather filed a petition to adopt F.D.H. Mother consented, but on December 13, 2021, Father filed objections to the proposed adoption. Because the adoption was contested by Father, on April 28, 2022, the trial court held a hearing to determine if his consent was required. After hearing testimony from Stepfather, Mother, Father, and F.D.H.'s paternal grandmother, and after considering several exhibits, the trial court determined that Father's consent for the adoption was unnecessary because he had not contacted or provided support for F.D.H. in the year preceding to the adoption filing.

{¶ 4} Father's appeal raises a single assignment of error.

II.     **Contested Adoption**

{¶ 5} In his assignment of error, Father asserts that the trial court erred when it held that his consent to the adoption was not required.

{¶ 6} It has been well established that a parent has a fundamental right to care for and have custody of his child and that those rights are terminated when a child is adopted.

*In re Adoption of M.M.R.*, 2d Dist. Champaign No. 2017-CA-12, 2017-Ohio-7222, ¶ 5. However, R.C. 3107.07(A) provides that consent to adoption is not required of a parent of a minor child "when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor * * * for a period of at least one year immediately preceding * * * the filing of the adoption[.]"

{¶ 7} While some of our sister Districts use a three-step analysis (*see In re Adoption of M.T.R.*, 5th Dist. Licking No. 2022 CA 00010, 2022-Ohio-2473; *In re Adoption of D.W.-E.H.*, 8th Dist. Cuyahoga No. 110705, 2022-Ohio-528; *In re Petition for Adoption of Z.H.*, 2022-Ohio-3926, 199 N.E.3d 1092 (6th Dist.)), this Court has determined that the probate court should use a two-step process when applying the contact prong of R.C. 3107.07(A). *In re Adoption of J.R.I.,* 2d Dist. Greene No. 2022-CA-22, 2023-Ohio-475. First, it must decide whether the parent has failed to have more than de minimis contact. *In the Matter of Adoption of M.M.R.* at ¶ 7. Probate courts have much discretion over these factual determinations, which will not be disturbed absent an abuse of discretion. *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 21-23; *In re Adoption of J.R.H.*, 2d Dist. Clark No. 2013-CA-29, 2013-Ohio-3385, ¶ 25-28. To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984).

{¶ 8} If the probate court determines that the parent failed to have more than de

minimis contact, the next step is to "determine whether justifiable cause for the failure has been proven by clear and convincing evidence." *In the Matter of Adoption of M.M.R.* at ¶ 8. The question of whether justifiable cause has been proven will not be disturbed on appeal unless the determination is against the manifest weight of the evidence. *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140 (1986), paragraph two of the syllabus. " 'In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice" that there must be a reversal of the judgment * * *.' " *In re Adoption of B.A.H.*, 2d Dist. Greene No. 2012-CA-44, 2012-Ohio-4441, ¶ 21, quoting *Steagall v. Crossman*, 2d Dist. Montgomery No. 20306, 2004-Ohio-4691, ¶ 29.

<u>Contact with F.D.H.</u>

**{¶ 9}** The probate court found that Father had had no contact with F.D.H. in the year leading up to the filing of the adoption petition (November 18, 2020, through November 18, 2021). It is undisputed that Father had not seen F.D.H. since he was invited to join Mother, Stepfather, and F.D.H. at the Renaissance Festival in September 2019. Similarly, Father admitted that in the one-year time period before Stepfather filed the adoption petition, he did not speak to F.D.H., mail her a letter, message her on social media, or send her a Christmas or birthday card. Based on that, we cannot say that the trial court abused its discretion when it found that Father had failed to have more than de minimis contact with F.D.H. in the year prior to the filing of the adoption petition. He, in

fact, had no contact.

{¶ 10} Even if a parent has completely failed to communicate with a child during the prescribed time period, his consent to adoption may still be required if there is justifiable cause for the failure of communication. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 367, 481 N.E.2d 613 (1985). "Typically, a parent has justifiable cause for non-communication if the adopting [parent] has created substantial impediments to that communication." *Id.*

{¶ 11} Because justifiable cause is a nebulous term, the Ohio Supreme Court has left it to the probate court, as the finder of fact, to determine if justifiable cause exists. *Id.*, citing *In re Adoption of McDermitt*, 63 Ohio St.2d 301, 408 N.E.2d 680 (1980). "The probate court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony." *Id.* The Ohio Supreme Court did give some guidance, though, noting that "significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child." *Id.* at 367-368.

{¶ 12} The party petitioning for the adoption must prove, by clear and convincing evidence, that the parent failed to communicate with the child during the year leading up to the adoption petition and that there was no justifiable cause. *In re Adoption of H.L.W.B.*, 2d Dist. Clark No. 2022-CA-25, 2022-Ohio-3161, ¶ 13.

{¶ 13} Father's chief argument in this regard is that he was prevented from communicating with his daughter. Father asserts that from the latter half of 2020 until

June 2021, he was either in jail or in the treatment facility with limited means to communicate with F.D.H. Father testified that in treatment, there were limited phones and limited times to use them. He also told the court that, during his time in the facility, he was only allowed to make one Zoom call. Instead of calling Mother to talk to F.D.H., Father used his phone calls and his Zoom call to converse with his mother, T.C. She testified that she was in constant contact with Father during his stay in treatment. There is no evidence in the record, however, that there was any purposeful effort to set up contact with F.D.H. through T.C. Further there was no effort from Father to send his daughter a card or a gift, even though T.C. could have made sure she got it; T.C. confirmed that F.D.H. had received gifts and cards sent from her.

{¶ 14} Father also claims that Mother significantly interfered with communication between him and F.D.H. To support this contention, Father points to a series of phone calls made to Mother in the weeks and months immediately following his June 17, 2021 release from treatment. The 12 relevant calls are represented in the following chart:

| DATE | TIME | CALL LENGTH |
| --- | --- | --- |
| June 20, 2021 | 8:32pm | 15 seconds |
| June 24, 2021 | 9:58pm | 21 seconds |
| June 26, 2021 | 12:05am | 4 seconds |
| June 28, 2021 | 12:07am | 13 seconds |
| June 29, 2021 | 1:16am | 4 seconds |
| July 1, 2021 | 11:36pm | 11 seconds |
| July 6, 2021 | 12:38am | 4 seconds |

| July 6, 2021 | 11:36pm | 50 seconds |
|---|---|---|
| July 23, 2021 | 10:49am | 63 seconds |
| August 9, 2021 | 8:30pm | 18 seconds |
| August 9, 2021 | 9:36pm | 49 seconds |
| December 9, 2021 | 11:39pm | 30 seconds |

Plaintiff's Exhibit 1. The testimony at trial, however, does not suggest that Mother significantly interfered with Father's communicating with F.D.H.

{¶ 15} At trial, both Mother and Father testified as to the phone calls. Mother recounted that on June 20, she had received a call from Father but did not answer as she was getting her children ready for bed. Father did not leave a voicemail message. Then, she testified that from June 24 until July 6 her phone was inoperable, and she did not know that Father (or anyone else for that matter) had called. For his part, Father admitted that the phone calls made during that time period – all of which were late at night and lasted only a handful of seconds – were likely "butt dials" or accidents. He admitted that if he called late at night, he was not trying to reach F.D.H.

{¶ 16} Mother told the court that she had initiated contact with Father on July 23 to ask for his consent to have Stepfather adopt F.D.H. Father did not answer one way or the other in that 63 second phone call but waited until August 9 to inform her that he would contest a potential adoption. After that, four months passed without any contact from Father. Finally, on December 9, two days after being served with the adoption petition, Father called to speak with F.D.H. That call, however, is irrelevant for our analysis,

because it occurred after Stepfather had filed the adoption petition.

{¶ 17} There were three instances, though, in which the parties agreed that Father had called and asked to speak with F.D.H. The first occurrence was in March 2021 when Father called to speak with his mother, T.C., who, just by chance, was at a birthday party that F.D.H. and Mother were also attending. T.C. brought the phone to F.D.H. and asked if she wanted to talk to her father, but she declined. In his brief, Father insinuates that Mother dissuaded F.D.H. from talking with him, but T.C. admitted at trial that Mother never told F.D.H. that she could not talk to Father, and Mother testified that she deferred to her daughter, who declined. It is also worth noting that when Father called, he did so wanting to speak with his mother, not F.D.H. He had no idea his daughter was there when he called.

{¶ 18} There was agreement about two other instances in the summer of 2021 in which Father called Mother to talk with F.D.H. There was also agreement that in those calls, when given the choice, F.D.H. chose not to talk to Father. Instead of pushing the issue, Father just accepted it and explained: "I was trying to be respectful of the way her mother felt and the way [F.D.H.] felt." Trial Tr. at 127.

{¶ 19} While the record indicates that Father made extremely limited attempts to contact F.D.H. during the year prior to the filing of the adoption petition and that F.D.H. chose not to speak with him, the analysis to determine if the lack of contact was without justifiable cause turned on whether there was significant interference or significant discouragement by Mother of the communication between Father and F.D.H. Based on the record before us, the trial court reasonably concluded that there was not. When

pressed at trial, Father could not give the court any examples or instances of Mother's trying to interfere with his seeing or contacting F.D.H., and Mother denied standing in the way. This is not a case in which the trial court clearly lost its way, creating a manifest miscarriage of justice. The judgment of the trial court was not against the manifest weight of the evidence.

Support and Maintenance of F.D.H.

{¶ 20} The probate court also determined that Father had not provided for the support and maintenance of F.D.H. This conclusion is borne out by the record.

{¶ 21} As to whether the parent has failed to provide for the support and maintenance of the child, the court must use a three-step process. First, it must determine what the law or judicial decree required of the parent during the year preceding the filing of the adoption petition. *In re Adoption of A.K.*, 168 Ohio St.3d 225, 2022-Ohio-350, 198 N.E.3d 47, ¶ 14. This makes sense because "[i]n order to determine whether a parent complied with the maintenance and support prong, the court necessarily needs to know the parent's obligation as required by law or judicial decree for the year prior to the filing of the petition." *In re Adoption of J.R.I.,* 2d Dist. Greene No. 2022-CA-22, 2023-Ohio-475, at ¶ 31. This preliminary step must be resolved before deciding whether the parent has failed to maintain and support the child. *Id.* at ¶ 18. Next, the court must decide if the parent met his or her obligation under the law or judicial decree. *In re Adoption of A.K.* at ¶ 14, citing *In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, 131 N.E.3d 28, ¶ 15. Finally, if the obligation was not met, the court must determine whether there was a justifiable cause for that failure. *Id.*

{¶ 22} In this case, even though Mother testified that she attempted to get a child support order, no judicial decree had been issued which required Father to pay child support for F.D.H. Nevertheless, "[m]aintenance and support, in the adoption context, do not simply refer to child support payments or other monetary contributions." *In re Adoption of K.L.M.,* 10th Dist. Franklin No. 15AP-118, 2015-Ohio-3154, ¶ 15. Maintenance and support can mean almost any type of "aid to feed, clothe, shelter, or educate the child; provide for health, recreation, travel expenses; or provide for any other need of the child. * * * Supplying shoes, diapers, or any other clothing can constitute support and maintenance." *In re Adoption of Groh*, 2003-Ohio-3087, 794 N.E.2d 695, ¶ 48 (7th Dist.).

{¶ 23} Father admitted that he provided no support, financial or otherwise, for F.D.H. in the November 18, 2020 – November 18, 2021 timeframe, and while that was not required by court order, he also failed to provide any other type of support.

{¶ 24} Father contends that he was prevented from providing for F.D.H., and he testified that he did not have F.D.H.'s address. Even assuming that was the case, it would not have taken Father much effort to find it. He was in constant contact with his parents, especially his mother, T.C., who testified that she had recently sent gifts to F.D.H. at her address in Moraine. T.C. confirmed that it was the correct address because F.D.H. called to thank her for sending the gift. Further, Mother testified that both of Father's parents had been to their house.

{¶ 25} Father also asserts that he should be excused from owing support because he tried to send financial support to F.D.H., but Mother refused. In support of this position, he cites *In re E.W.H.*, 4th Dist. Meigs No. 16CA8, 2016-Ohio-7849, ¶ 46, which states,

when "a child's needs are adequately provided for by a custodian who is in a better financial position than the natural parent, and the custodian expresses no interest in receiving any financial interest from the natural parent, the natural parent's failure to support the child may be deemed justifiable." The record, however, belies his assertion.

**{¶ 26}** Mother testified that she never refused Father's support or maintenance and, in fact, stated that the support would have helped. Trial Tr. at 36, 56. Mother also testified and presented evidence (Ex. 2) that in early 2018 she sought child support from Father through the Butler County Support Enforcement Agency. Trial Tr. at 57. Both parties testified that Father refused to give his address; thus, child support was never established. The child support case was then transferred to Montgomery County where it remained as of April 2022. The record simply did not support the argument that Mother refused support.

**{¶ 27}** Based on the record before us, we cannot say that the trial court erred when it found Father had failed, without justifiable cause, to be in contact with or to provide maintenance and support for F.D.H. during the period of one year immediately preceding the filing of the adoption petition. Father's assignment of error is overruled.

### III.    Conclusion

**{¶ 28}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.