[Cite as *In re Adoption of W.M.*, 2023-Ohio-1365.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE ADOPTION OF W.M.          :

                                                    No. 111580

A Minor Child          :

[Appeal by Stepfather]          :

                                              :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** April 27, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2021ADP09927

## *Appearances:*

Steven J. Trapp, *for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1}     Stepfather-appellant, J.M. ("stepfather"), appeals the trial court's dismissal of his petition for adoption. After a thorough review of the facts and the applicable law, we reverse the judgment of the trial court.

**Procedural History and Facts**

{¶ 2} W.M. ("child" or "son") was born on February 5, 2013. At the time, the child's mother was in a relationship with the child's father, W.G. ("father").[1] When the child was three years old, mother and stepfather married. On October 15, 2021, stepfather filed a petition for adoption alleging that father's consent was not required because father had failed, without justifiable-cause, to provide more than de minimis contact with the minor child and failed to provide for the maintenance and support of the minor. Father objected to the application. In April 2022, the trial court held a consent hearing at which the mother and father testified.

{¶ 3} Father testified to the following. He moved away from Cleveland when the child was four or five years old. He was homeless for a time and lived between Cleveland, Pennsylvania, and Columbus. At the time of the hearing, father lived and worked in Columbus, which he testified was an "emotionally stable environment."

{¶ 4} Father and mother initially had an informal system of visitation and child support but that ended when a neighbor reported him to children protective services ("CPS") for allegedly abusing the child when the child was "about four years old." After mother received notice of the report, she refused to allow father to have contact with the child until a judge ordered her to do so. After this occurred, mother let him see their son twice and then they had "another falling out." Since the falling

---

[1] Father established paternity by executing a voluntary acknowledgment of paternity with the Central Paternity Registry.

out, father had not tried to contact the child because "[mother] told me that I couldn't contact him * * *."

{¶ 5} In 2018, father went to juvenile court to try and establish a child support order, but he did not have the money for an attorney. On September 23, 2020, he filed an application to determine custody, shared parenting, and parenting time (hereinafter "application for parenting time") in Cuyahoga County Juvenile Court. The matter proceeded through juvenile court and after several delays, father had his first visitation with the child via Zoom on November 9, 2021. Since that time, he has had two supervised visits and one therapy visit with his son.[2]

{¶ 6} According to father, he did not try to contact his son because mother told him he would not be able to see him. When asked if he paid child support or otherwise supported his son, father testified, "No, not since she told me that she does not want anything from me. And I can't see him up until the court says that I'm allowed to." Father also testified that he did not send the child a birthday card or otherwise try to wish him happy birthday because he did not believe mother would give the child anything he sent.

{¶ 7} Mother testified to the following. Father was invited to their son's fourth birthday party in February 2017, but did not show up. The last contact she had with father was in April 2017. Since that time, father has made no effort to call, mail, visit, or otherwise reach out to the child. Mother lived at the same address

---

[2] The case in juvenile court is still pending.

from November 2015 until July 2020, and father knew where they lived because he was there in 2016 for trick-or-treating. Mother testified that when she moved with stepfather and the child in July 2020, father knew the new address through his attorney. Mother has had the same phone number for the last seven years and the same email address for the last ten years. Mother denied telling father that he could not see their son until a judge ordered her to let him visit, but acknowledged that she told the father that he had to get the "issue" with CPS resolved.[3]

{¶ 8} In a journal entry dated April 28, 2022, the probate court found that stepfather failed to establish, by clear and convincing evidence, that the father's consent was not required to proceed with the adoption petition; therefore, absent father's consent, the adoption petition could not proceed. Specifically, the trial court found that father had supervised visits with the child in the year leading up to the filing of the adoption petition, mother interfered with father's access to the child, and father attempted to establish a support order prior to stepfather's filing of the adoption petition.

{¶ 9} The trial court dismissed the petition for adoption. Stepfather filed a timely notice of appeal and raises four assignments of error for our review:

> I. The trial court erred in finding that (father) was having court ordered contact with the minor child prior to the filing of the petition.
>
> II. The trial court erred in finding that "Through the juvenile court process, [father] has been able to have supervised visits with the child in the year leading up to the filing of the petition."

---

[3] Neither party introduced additional evidence regarding an investigation or case with a child protective services agency.

III. The trial court erred in finding that within the one-year period prior to the filing of the adoption petition (father) was participating in court ordered visitation with the minor child as a result of an action he initiated long before the filing of the petition.

IV. The trial court erred in finding that Petitioner has failed to establish by clear and convincing evidence that (father) failed without justifiable-cause to have more than de minimis contact with the child.

**Failure to Comply with Appellate Rules**

{¶ 10} As an initial matter, we note that appellant has failed to comply with Loc.App.R. 3, App.R. 12 and App.R. 16. Loc.App.R. 3(B)(1) provides:

> The notice of appeal must individually name each party taking the appeal and must have attached to it a copy of the judgment or order appealed from (journal entry) signed by the trial judge and time-stamped with the date of receipt by the clerk. The subject attachments are not jurisdictional but their omission may be the basis for a dismissal.

{¶ 11} The original notice of appeal stepfather filed in this case was stricken from the record for failure to comply with Loc.App.R. 13.2 because certain filings contained the father's and child's name. Stepfather refiled his notice of appeal redacting those names in accordance with Loc.App.R. 13.2, but stepfather failed to attach the judgment from which he was appealing. However, as stated in Loc.App.R. 3(B)(1), the attachments are not jurisdictional; therefore, we will consider the appeal.

{¶ 12} App.R. 12(A)(2) provides that this court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A). Stepfather lists four separate

assignments of error, yet applies one argument to all four assignments of error. It is not the reviewing court's obligation to search the record for evidence to support an appellant's argument as to any alleged error, let alone four alleged errors lumped into a single argument. However, because cases are best decided on their merits, this court will employ its discretion to address stepfather's assignments of error in a consolidated fashion. *See SHJ Co. v. Avani Hosp. & Fin., L.L.C.*, 2022-Ohio-1173, 187 N.E.3d 1121, ¶ 12 (8th Dist.).[4]

{¶ 13} We now turn to the assigned errors.

**Law and Analysis**

{¶ 14} A parent has a fundamental right to care for and have custody of his or her child and those rights are terminated when a child is adopted. *In re Adoption of F.D.H.*, 2d Dist. Montgomery No. 29562, 2023-Ohio-730, ¶ 6, citing *In re Adoption of M.M.R.*, 2d Dist. Champaign No. 2017-CA-12, 2017-Ohio-7222, ¶ 5. However, R.C. 3107.07(A) provides that consent to adoption is not required of a parent of a minor child

> when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable-cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor * * * for a period of at least one year immediately preceding * * * the filing of the adoption[.]

---

[4] Counsel is admonished that future failure to comply with the appellate rules could result in striking of the brief or further sanctions. *See SHJ Co. v. Avani Hosp. & Fin., L.L.C.*, at *id.*

{¶ 15} When applying R.C. 3107.07(A), the trial court considers the following: (1) whether the parent has failed to communicate with or failed to support a child for a minimum of one year preceding the filing of the adoption petition, and, if so, (2) whether there was justifiable-cause for that failure. *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 23.

{¶ 16} The probate court may examine any preceding events that may have a bearing on the noncustodial parent's failure to communicate with the child; the court is not restricted to focusing solely on events occurring during the statutory one-year period preceding the filing of the adoption petition. *In re Adoption of S.T.M.*, 5th Dist. Tuscarawas No. 2022 AP 09 0028, 2023-Ohio-38, ¶ 26, citing *In re: Adoption of Lauck*, 82 Ohio App.3d 348, 612 N.E.2d 459 (9th Dist.1992); *see also In re Adoption of Hedrick*, 110 Ohio App.3d 622, 627, 674 N.E.2d 1256 (8th Dist.1996).

{¶ 17} The stepfather, as petitioner for adoption, had the burden of proving by clear and convincing evidence that father failed to have more than de minimis contact with the child for at least one year preceding the filing of the adoption petition and the lack of contact was without justifiable-cause. *In re Adoption of Bovett*, 33 Ohio St.3d 102, 104, 515 N.E.2d 919 (1987). The probate court, as the finder of fact, determines if justifiable-cause exists. *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 367, 481 N.E.2d 613 (1985), citing *In re Adoption of McDermitt*, 63 Ohio St.2d 301, 408 N.E.2d 680 (1980). "The probate court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the

accuracy of their testimony." *In re Adoption of Holcomb* at *id.*, citing *In re Adoption of McDermitt* at *id.* Therefore, a probate court's justifiable-cause decision will not be disturbed on appeal unless that determination is against the manifest weight of the evidence. *In re Adoption of D.W.-E.H.*, 8th Dist. Cuyahoga No. 110705, 2022-Ohio-528, ¶ 26, citing *In re Adoption of M.B.* To determine whether a judgment is against the manifest weight of the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers witness credibility, and determines whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice" that there must be a reversal of the judgment. *In re Adoption of F.D.H.*, 2d Dist. Montgomery No. 29562, 2023-Ohio-730, at ¶ 8, citing *In re Adoption of B.A.H.*, 2d Dist. Greene No. 2012-CA-44, 2012-Ohio-4441.

{¶ 18} In its judgment entry dismissing the petition for adoption, the trial court determined that father had more than de minimis contact with his son in the year prior to the filing of the adoption petition. Specifically, the court found that father had court-ordered supervised visits with the child in the prior year and court-ordered contact with the child immediately prior to the petition's filing. The court's findings are not supported by the record.

{¶ 19} Stepfather filed the petition for adoption on October 15, 2021. The record reflects that father's first visitation with the child since before February 2017,[5]

_____

[5] Neither party testified when father's last contact was with the child, but mother testified that father did not appear at their son's fourth birthday party, which was held in February 2017, and she had little to no contact with father after the birthday party.

occurred on November 9, 2021, *after* the adoption petition was filed. Thus, father failed to have any contact with his son, let alone more than de minimis contact, within one year prior to the filing of the adoption petition.

{¶ 20} Next, we consider whether father had justifiable-cause for his failure to provide more than de minimis contact with the child in the year preceding the filing of the adoption petition. The trial court considered father's previous attempts to establish child support orders and visitation. Specifically, the court considered father's 2018 attempt to file for parenting time, but found that father was unable to file paperwork because he was homeless and did not have mother's then-current address and his pending application for parenting time in juvenile court.

{¶ 21} Mother testified that she and their son lived at the same address from November 2015 to July 2020 and father knew the address because he was there in October 2016 for trick-or-treating. Father testified that he went to juvenile court in 2018 to establish a child support order and visitation with the child, but was told he "could not file on himself." He further testified he did not have the money to hire an attorney. Father provided no documentation to support his claim. Presumably father filed in Cuyahoga County, where the child resides. If he had tried to file in our county's juvenile court, he would have been directed to the court's pro se clinic, where he would have been advised to file an application to establish parental rights and responsibilities, just as he did in September 2020.

{¶ 22} The trial court found that mother "admitted to interfering with [father's] access to the child," and "prohibited [father] from seeing the child." The

trial court acknowledged that "no evidence of any involvement by children's services was presented to the court."

{¶ 23} Father testified that mother would not allow him to see the child until a judge "tells her to." Mother admitted that she told father he had to resolve the "CPS issue" before he could see his son, but denied telling father he could not see their son until he had a court order allowing visitation. Mother also testified that she allowed father to see their son twice after the CPS issue arose, and he was invited to their son's fourth birthday party, but he did not come. After father failed to appear at the birthday party, mother heard from him once more, in April 2017, and did not hear from him again until she received papers from juvenile court in September 2020, "except for him asking for my new address."

{¶ 24} In *In re Adoption of Holcomb*, 18 Ohio St.3d at 367, 481 N.E.2d 613, the Ohio Supreme Court held that a parent could establish justifiable-cause for noncommunication if the other parent has created substantial impediments to that communication. But to establish justifiable-cause, "*significant* interference by a custodial parent with communication between the non-custodial parent and the child, or *significant* discouragement of such communication, is required * * *." (Emphasis sic.) *Id*. at 367-368.

{¶ 25} In one of two cases the court considered in *In re Adoption of Holcomb*, the Ohio Supreme Court upheld the appellate court's decision reversing the probate court's decision granting a stepmother's petition for adoption as being unsupported by clear and convincing evidence. *Id*. at 369. In the underlying case,

the father, unbeknownst to the mother, moved out of state with stepmother and the children and refused to provide mother with his new address or phone number. Mother tried numerous ways to contact her children including sending presents and letters to the children's grandmother to give to them and letters to an acquaintance to give to the children at their school. Mother went as far as to travel out of state to where she thought father and the children lived and drove around neighborhoods looking for her children. *Id.* at 362-363. The court determined that father and stepmother "significantly interfered with and discouraged respondent's numerous and varied attempts to establish communication with her children." *Id.* at 369.

{¶ 26} In this case, we are not persuaded by father's repeated excuse that his lack of contact with his son was based on mother's refusal to allow him contact until a court ordered visitation. The trial court found that mother's "reference" to a child protective service case was "acknowledging that she prohibited [father] from seeing the child." However, as the trial court *also* acknowledged, the parties presented no evidence of involvement by children services. Moreover, father presented no evidence that a court of competent jurisdiction ever issued an order prohibiting him from visiting his son.

{¶ 27} Further, even if there had been a court order denying visitation, such an order is not justifiable-cause for failing to contact one's child in another manner, such as phone call, email, letter, cards, or social media, unless the court order specifically prohibits all contact. *See In re Adoption of T.R.S.*, 7th Dist. Belmont No. 13 BE 43, 2014-Ohio-3808, ¶ 21 (Since the no-contact order did not prohibit all

forms of contact between the parent and child, the order is not justification for the parent to fail to communicate with his child by another means.); *but see In re A.K.*, 168 Ohio St.3d 225, 2022-Ohio-350, 198 N.E.3d 47, ¶ 21 (a parent's right to consent to adoption is not extinguished when the parent did not have more than de minimis contact with the child during the statutory period because the parent was acting in compliance with a no-contact order prohibiting all communication and contact with the child).

{¶ 28} In *In re Adoption of F.D.H.*, 2d Dist. Montgomery No. 29562, 2023-Ohio-730, the Second District Court of Appeals found that the trial court's judgment that father had had no contact with the child in the year preceding the filing of the adoption petition was not against the manifest weight of the evidence. During most of the year preceding the filing of the adoption petition, the father was either in jail or a treatment facility and had limited ability to see or call his child. The court noted that the father made daily calls to his own mother while incarcerated, but made no "purposeful effort" to contact his child. *Id.* at ¶ 13. Father also failed to show that the mother interfered in any attempts he may have made to contact the child. *Id.* at ¶ 17. The court determined that father's incarceration or stay at a treatment center was not justifiable-cause to not contact his child. *Id.* at ¶ 13.

{¶ 29} In this case, father testified that he was currently living and working in Columbus in an "emotionally stable environment." In the year preceding the filing of the adoption petition, and for several years prior to the filing, father failed to have any contact with his son. He made no attempt to call, email, write, send a

gift or card, or otherwise communicate with his child. Other than stating that he believed he could not see his child because mother told him he could not until a court ordered visitation, father presented no evidence that mother prevented him from contacting his son. Simply put, there is not competent and credible evidence in the record that mother significantly interfered or discouraged communication between father and son. From February 2017, (the child's fourth birthday), to November 2021, (father's first visit via Zoom), father could have called, emailed, sent a card or gift, mailed a letter, or sent a note through a family member, but he chose not to do so.

{¶ 30} That said, we recognize that father has tried to establish a relationship with his son by filing an application for parenting time, and the numerous delays in that case appear to be through no fault of his own. The fact that father's consent will not be required for the adoption does not automatically mean he approves of the adoption or that his input does not matter. Father continues to be the child's biological father, and he is entitled to an opportunity to participate in the proceedings to show that the adoption is not in the child's best interest.

> [U]ntil the hearing on the merits of the petition and the best interest of the minor child has been determined the [biological] parent not only retains parental rights and responsibilities but retains an overriding interest in being heard relevantly on the issue of whether the proposed adoption would be in the best interest of the child. It is not difficult to imagine a scenario where a [biological] parent, even though he or she could not bar the adoption by withholding consent, could offer evidence of probative value that the adoption proposed would not be in his or her child's best interest.

*In re Adoption of Jorgensen,* 33 Ohio App.3d 207, 209-210, 515 N.E.2d 622 (3d Dist.1986).

{¶ 31} Having reviewed the entire record, we conclude that the manifest weight of the evidence does not support the trial court's determination that stepfather failed to establish by clear and convincing evidence that father failed without justifiable-cause to have more than de minimis contact with the child.

{¶ 32} The assignments of error are sustained.

{¶ 33} Judgment reversed and case remanded for proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

EILEEN A. GALLGHER, P.J., and
MARY EILEEN KILBANE, J., CONCUR