[Cite as *In re Adoption of D.X.B.*, 2025-Ohio-2354.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF D.X.B., A MINOR | : | |
| | : | C.A. No. 30404 |
| | : | |
| | : | Trial Court Case No. 2024 ADP 00073 |
| | : | |
| | : | (Appeal from Common Pleas Court-Probate Division) |
| | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 3, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.


[[Applied Signature]]
_____
CHRISTOPHER B. EPLEY, PRESIDING JUDGE


[[Applied Signature 2]]
_____
MICHAEL L. TUCKER, JUDGE

[[Applied Signature 3]]

ROBERT G. HANSEMAN, JUDGE

**OPINION**
MONTGOMERY C.A. No. 30404

ALANA VAN GUNDY, Attorney for Appellant
PATRICIA A. WILKINSON, Attorney for Appellee

EPLEY, P.J.

{¶ 1} Mother, the biological mother of D.X.B., appeals from a judgment of the Montgomery County Court of Common Pleas, Probate Division, which concluded that her consent to her son's adoption by his paternal grandmother and step-grandfather was not required. For the following reasons, the trial court's judgment is affirmed.

### I. Facts and Procedural History

{¶ 2} D.X.B. was born in March 2012 to Mother and Father, who were not married. Father died in October 2017 in an automobile accident. In September 2020, Montgomery County Children Services became involved with Mother due to her drug addiction and her hospitalization for unmanaged diabetes. D.X.B. was placed in his paternal grandmother's care, and in February 2022, Grandmother obtained legal custody of him. (Grandmother testified that she has permanent custody of D.X.B., but the parties appear to agree that the juvenile court gave her legal custody.)

{¶ 3} On June 3, 2024, Grandmother and her husband (collectively, Grandparents) filed a petition to adopt D.X.B. They alleged that Mother had failed, without justifiable cause, to provide more than de minimis contact with D.X.B. and to provide for his maintenance and support. Mother objected to Grandparents' petition, and on January 30, 2025, the probate court conducted a hearing on whether Mother's consent was required.

At the proceeding, the court heard from Grandparents and Mother. Grandparents offered three exhibits, but the court later sustained Mother's objections to them. Ultimately, on February 10, 2025, the court concluded that Mother's consent was not required because she had failed, without justifiable cause, both to support her son for at least one year preceding the filing of the adoption petition and to provide maintenance and support for him during that period.

{¶ 4} Mother appeals from the trial court's judgment.

## II. Consent Requirement

{¶ 5} In her sole assignment of error, Mother claims that the trial court erred when it found that her consent was not required under R.C. 3107.07(A). She states that Grandparents failed to establish a clear timeline and that they prevented her from seeing her child.

{¶ 6} A parent has a fundamental right to care for and have custody of his or her child, and those rights are terminated when a child is adopted. *In re Adoption of M.M.R.*, 2017-Ohio-7222, ¶ 5 (2d Dist.). "Because adoption acts to permanently terminate parental rights, the written consent of a minor child's parents is ordinarily required in order to proceed with the adoption action." *In re L.R.O.*, 2020-Ohio-3200, ¶ 7 (2d Dist.).

{¶ 7} R.C. 3107.07(A) provides exceptions to the consent requirement. During the pendency of this matter in the probate court, R.C. 3107.07(A) provided that consent to adoption by a minor child's parent is not required "when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause [(1)] to provide more than de minimis contact with the minor or [(2)] to provide for the maintenance and support of the minor . . . for a period of at least one year immediately preceding . . . the filing of the adoption

petition[.]" *See* former R.C. 3107.07(A).

{¶ 8} R.C. 3107.07(A) is written in the disjunctive. Consequently, the failure, without justifiable cause, to provide either more than de minimus contact or maintenance and support for the one-year time period is sufficient to eliminate the need for consent. *In re Adoption of E.A.K.*, 2021-Ohio-1835, ¶ 19 (2d Dist.).

**A. Contact with D.X.B.**

{¶ 9} In this appellate district, courts employ a two-step process when applying the contact prong of R.C. 3107.07(A). *In re Adoption of J.R.I.*, 2023-Ohio-475 (2d Dist.). *Contrast, e.g., In re Adoption of M.T.R.*, 2022-Ohio-2473 (5th Dist.) (using a three-step analysis). First, the court must decide whether the parent has failed to have *more than* de minimis contact with the child. *In re Adoption of M.M.R.* at ¶ 7. Contact includes not only physical contact, but also other forms of contact, such as gifts, cards, letters, telephone calls, and text messages. *See In re A.J.W.*, 2024-Ohio-3124, ¶ 54 (2d Dist.). Though not defined by statute, "more than de minimis contact" implies contact – either attempted or successful – beyond a single occurrence. *In re Adoption of T.U.*, 2020-Ohio-841, ¶ 25 (6th Dist.). That is, it demands " 'more quality and quantity' and requires 'more effort from the parent to have contact and communication with the child' than is shown by a one-time contact." *Id.*, quoting *In re Adoption of K.A.H.*, 2015-Ohio-1971, ¶ 10 (10th Dist.). Black's Law Dictionary describes de minimis as "trifling; negligible." *Black's Law Dictionary* (11th ed. 2019).

{¶ 10} Probate courts have much discretion over factual determinations – like whether there has been more than de minimis contact – and those determinations will not be disturbed absent an abuse of discretion. *In re Adoption of M.B.*, 2012-Ohio-236, ¶ 21-23; *In re Adoption of J.R.H.*, 2013-Ohio-3385, ¶ 25-28 (2d Dist.). To constitute an abuse of

discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232 (1984).

{¶ 11} If the probate court determines that the parent had only de minimis (or no) contact, the next step is to "determine whether justifiable cause for the failure has been proven by clear and convincing evidence." *In re Adoption of M.M.R.*, 2017-Ohio-7222, at ¶ 8. The term "justifiable cause" is not defined in R.C. 3107.07, but important considerations include the parent's willingness and ability to contact the child and the parent's efforts to enforce his or her parental rights. *In re Adoption of G.A.J.-K.*, 2025-Ohio-1276, ¶ 47 (2d Dist.). Significant interference by the child's custodian with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with his or her child. *In re the Adoption of F.D.H.*, 2023-Ohio-730, ¶ 11; *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 367-368 (1985).

{¶ 12} The trial court's ruling regarding justifiable cause will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Adoption of Masa*, 23 Ohio St.3d 163 (1986), paragraph two of the syllabus. In reviewing whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that there must be a reversal of the judgment and an order for a new trial. *In re Adoption of B.A.H.*, 2012-Ohio-4441, ¶ 21 (2d Dist.), quoting *Steagall v. Crossman*, 2004-Ohio-4691, ¶ 29 (2d Dist.).

{¶ 13} The trial court found that Mother had failed, without justifiable cause, to have more than de minimis contact with D.B.X. during the relevant one-year time period. There

was substantial evidence to support that conclusion.

### 1. Amount of Contact

{¶ 14} Grandmother testified, and Mother agreed, that Mother last had physical contact with D.X.B. around Mother's Day 2023. At that time, Mother was in the hospital intensive care unit due to complications with diabetes, and Grandparents took D.X.B. to the hospital to see her. Grandmother expressly stated that Mother did not visit with D.X.B. in person between June 2023 and June 2024, the relevant time period. Step-Grandfather testified regarding an occasion during that time when Mother was supposed to meet them at a McDonald's to visit, but Mother never showed up.

{¶ 15} Grandmother further testified that Mother would call to schedule phone visits, but then Mother did not follow through with the calls. Grandmother described a phone conversation with Mother in which Mother cried and expressed that she "just can't talk to him;" D.X.B. heard the conversation and was emotionally hurt by Mother's statements.

{¶ 16} In September 2023, Grandmother contacted the juvenile court because of Mother's repeated failure to call or visit when she said she would. That same month, Grandmother told Mother that she needed to seek supervised visitation through the courts, because Grandmother was no longer able to do it. Grandmother hoped that Mother would be more compliant with visitation if supervised visitation were provided through the court. Grandmother testified that Mother repeatedly told her that she (Mother) had filed the necessary paperwork with the court and that there was a delay in processing it. However, Mother did not seek supervised visitation through the juvenile court until May 2024.

{¶ 17} Mother acknowledged that she was addicted to drugs between 2021 and 2023. She denied that Grandmother had obtained custody of D.B.X. because of a drug overdose and attributed it solely to her having had a stroke due to severe diabetes. Mother thought

the arrangement would be temporary, but she said that whenever she tried to contact Grandmother to see her son, Grandmother would not answer her calls.

{¶ 18} Mother did not describe any occasions on which she talked with D.B.X. on the phone or otherwise communicated with D.B.X. after Mother's Day 2023. In its decision, the trial court indicated that it had spoken with D.B.X. in camera, and D.B.X. similarly reported that his last contact with Mother was on Mother's Day 2023. He told the court that he had not received gifts, greeting cards, or other communications for years.

{¶ 19} The record reflects, as Mother contends, that the parties were not always precise about the timeframes they were discussing. And many of the answers to questions went far afield of the original question. Indeed, at one point, Grandmother appeared to testify that, during the June 2023 to June 2024 time period, Mother was calling on a monthly basis, and D.B.X. spoke with Mother whenever she called. However, those statements were inconsistent with Grandmother's repeated assertions that Mother was not following through with visitation or phone calls with D.B.X. leading up to her contacting the juvenile court in September 2023. Moreover, neither Mother nor D.B.X. testified that they had communicated during the relevant time period. On review of the record, we cannot conclude that the trial court abused its discretion when it concluded that Mother had failed to have more than de minimis contact with D.B.X. in the 12 months preceding the filing of the adoption petition.

### 2. Justifiable Cause

{¶ 20} Mother claims that she had justifiable cause for not visiting with D.B.X., namely that Grandmother would not allow visitation. Mother testified that after Grandmother stopped answering her phone calls, she would then text Grandmother, but Grandmother had cut off all communication since "Mother's Day of last year." Mother explained that

Grandmother did so over a disagreement over Mother's claiming D.B.X. as a dependent for tax purposes.

**{¶ 21}** Mother testified that Grandmother repeatedly told her that she needed to go to treatment and comply with the probation department. Mother asserted that she met these demands, but Grandmother refused to allow Mother to prove her compliance. Mother reiterated that Grandmother cut off all contact.

**{¶ 22}** Grandmother acknowledged that, after obtaining custody of her grandson, she had control over Mother's visitation with D.B.X. She testified, however, that she encouraged visits by Mother and never did anything to discourage them. For example, she informed Mother of different events that were meaningful to D.X.B., such as his baptism and piano competitions, but Mother did not attend. Grandmother indicated that Mother repeatedly failed to show for visitation. She denied that she told Mother that she (Mother) had to stop using drugs and complete a treatment program before she could visit with D.X.B.

**{¶ 23}** On cross-examination, Mother's attorney asked Grandmother about Grandmother's indication that she would not allow Mother to have visitation unless the juvenile court granted supervised visitation. Grandmother responded: "It was my understanding when we were in court the last time [sometime in 2024], the judge, he told me that I would have to allow her to have supervised visit, and I would have to schedule it because they were booked up at the site that she was supposed to be going to where I was to bring him, [D.B.X.], too, so she could have her supervised visit." She further testified that the juvenile court "did not order that" because the judge was waiting to see what occurred in the adoption case. Mother's attorney then asked if Grandmother had honored Mother's request for visitation in 2024; Grandmother replied, "No. I have not honored that. I was not given that opportunity. I wanted . . . her to have her visits through the court." Tr. 34-35.

**{¶ 24}** In concluding that Mother did not have justifiable cause for her lack of contact with D.X.B., the trial court found that Mother did not attempt to enforce her parental rights through the juvenile court until May 2024, and that this delay was through no fault of Grandparents. And although Mother was in drug treatment during the relevant time period, Mother was not incarcerated or otherwise restrained from seeing D.B.X. The court noted that Mother had provided no direct proof that she had made any effort to contact D.X.B., including text records, court filings, or other means. The trial court, as the trier of fact, was free to credit Grandmother's testimony that she had not discouraged contact between Mother and D.X.B., and although Grandmother acknowledged that she told Mother to contact the juvenile court to arrange for supervised visitation, the evidence supported that Mother failed to do so until May 2024, no more than a month before Grandparents filed their petition. The trial court's finding that Mother lacked justifiable cause for failing to have more than de minimis contact in the year prior to the filing of the adoption petition was not against the manifest weight of the evidence.

### B. Maintenance and Support of D.X.B.

**{¶ 25}** The probate court also determined that Mother had not provided for the maintenance and support of D.X.B. This conclusion is also supported by the record.

**{¶ 26}** As to whether a parent has failed to provide for the support and maintenance of a child, the court must use a three-step process. First, it must determine what the law or judicial decree required of the parent during the year preceding the filing of the adoption petition. *In re Adoption of A.K.*, 2022-Ohio-350, ¶ 14. This is so because "to determine whether a parent complied with the maintenance and support prong, the court necessarily needs to know the parent's obligation as required by law or judicial decree for the year prior to the filing of the petition." *In re Adoption of J.R.I.*, 2023-Ohio-475, ¶ 31. Next, the court

must decide if the parent met his or her obligation under the law or judicial decree. *In re Adoption of A.K.* at ¶ 14, citing *In re Adoption of B.I.*, 2019-Ohio-2450, ¶ 15. Finally, if the obligation was not met, the court must determine whether there was justifiable cause for that failure. *Id.*

{¶ 27} Grandmother and Mother agreed that Mother was required to pay monthly child support. Grandmother believed that the amount was $22.60 per week or "about $80 a month" [sic]; Mother was not sure of the amount. According to Grandmother, Mother had not made any child support payments as of June 2023. In addition, Mother did not contribute funds for D.B.X.'s schooling, his piano lessons, his sports activities, or any of his medical care. No financial support of any kind was provided between June 2023 and June 2024. Grandmother stated that D.B.X. had United Healthcare through Medicaid and a survivor benefit from his father.

{¶ 28} D.B.X. similarly told the trial court that he had not received anything of value (such as money, gifts, or clothing) from Mother for years.

{¶ 29} Mother testified that she was not able to have employment while she was in drug treatment. She stated that when she was not in treatment, she spent most of her time in the hospital. When discussing her progress with drug court, Mother indicated that she had paid her financial obligations for her case.

{¶ 30} When the hearing occurred in late January 2025, Mother was employed as a shift manager at McDonald's and had started the job approximately two months earlier. Mother had worked at Wendy's beginning a few months before that. She stopped working at Wendy's when her diabetes caused her to be hospitalized again. Mother indicated that child support was taken out of her paycheck. The trial court found that Mother was employed at times in the relevant period, but Mother's testimony suggested that her

employment with the restaurants began after the adoption petition was filed.

{¶ 31} Mother indicated that she was eligible for full disability and had received paperwork from her doctors three or four years earlier. However, she had not completed the paperwork to receive disability payments due to her inability to comply with all the necessary doctor appointments while "in the treatment and stuff."

{¶ 32} Mother described a time when she had tried to bring new clothing to D.B.X. at Grandparents' home, but Grandmother would not allow it. She testified that Grandmother threatened to call the police if Mother came back. Mother told the court that she had paid for the clothing with cash from William, the man with whom she lived; he gave her money for cleaning his house and doing things for him. Mother indicated that William was the one who had physically purchased the clothing. Mother also testified that she asked Grandmother throughout the year what D.B.X. needed, and Grandmother said he did not need anything.

{¶ 33} Mother's testimony reflected that her earning ability was limited. However, there was no evidence that Mother provided *any* monetary support to D.B.X. during the relevant one-year period, despite having a court-ordered child support obligation. Nor was there any testimony that Mother had sought a reduction in her child obligation due to her physical disability. Mother testified that she was eligible for disability, but she had not followed through with obtaining those benefits. Mother also told the court that she had attempted to provide clothing for D.B.X. on one occasion and, at other times, had asked about his other needs. However, when told that D.B.X. did not need anything, Mother did not apply available funds toward child support. Moreover, it appears that Mother's male companion may have been purchasing the items, rather than Mother.

{¶ 34} On this record, the trial court reasonably concluded that Mother had not

provided for the support and maintenance of D.X.B. Its conclusion that this failure was not justified was not against the manifest weight of the evidence.

{¶ 35} Mother's assignment of error is overruled.

### III. Conclusion

{¶ 36} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, J. and HANSEMAN, J., concur.